Richard E. Bergeron III
Email: Rich.Bergeron@gmail.com
617-209-4325

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEVADA

2:11-cv-00772-JCM -PAL

2:11-cv-00913-GMN-LRL

| | |
|---|---|
| In re:<br><br>XYIENCE, INCORPORATED,<br>A Nevada Corporation,<br><br>Debtor. | Case No: BK-S-08-10474-MKN<br>Chapter 11<br><br>Adversary No. 08-1082-MKN |
| XYIENCE, INCORPORATED,<br><br>Plaintiff.<br><br>v.<br><br>RICHARD BERGERON, an individual,<br><br>Defendant. | |
| RICHARD BERGERON, an individual,<br><br>Counterclaimant,<br><br>v.<br><br>XYIENCE INCORPORATED, a Nevada corporation,<br><br>Counterdefendant. | **OPPOSITION TO APPELLEE'S MOTIONS TO DISMISS**<br><br>Hearing Date: n/a<br>Time: n/a |

**DEFENDANT AND COUNTERCLAIMANT RICHARD E. BERGERON'S OPPOSITION TO APPELLEE'S MOTIONS TO DISMISS**

NOW COMES Appellant, Rich Bergeron, and submits this joint opposition to the appellee's coordinated double Motion to Dismiss in both appeals cases. (00913 and 00772).

**POINTS AND AUTHORITIES:**

CASES:

2:11-cv-00913-GMN-LRL

This case tackles the issue of an unconstitutional injunction order, and this is the case that most significantly relies on First Amendment precedent. There are multiple aspects making the service of documents pertinent to this case as well. Bergeron was not served in time with the appeals court documents until it was too late to serve and file any responses. This is Bergeron's first opportunity to respond without the deadline having already passed by the time he received a hard copy of the documents.

The injunction was entered in the core case, which Bergeron is not traditionally served in. There is no record that the injunction order also was docketed in the Adversary proceeding. By haling Bergeron into the core case, they acknowledged his standing in that respect to argue in relation to that core case. They brought him into that case without having served him all the proper documentation in that case.

Bergeron inquired with Garman repeatedly about the final injunction order and

his intent to appeal, but Garman languished in sending a hard copy. The hard copy only arrived when it was already too late to appeal it under the 14-day rule. This is irresponsible legal maneuvering to say the least.

Attorney Gregory Garman and his clients have thus far received entirely favorable treatment in the District of Nevada due to casino ownership and the high taxes paid by these individuals who are in an ownership interest of Zyen, LLC, namely Frank Fertitta III and Lorenzo Fertitta. Zyen, LLC is a subsidiary of Fertitta Enterprises as well as a sponsor of The Ultimate Fighting Championships (the UFC) and many of their fighters. Frank Fertitta III and Lorenzo Fertitta also own a majority of the UFC.

The high level of bias in this case is appalling. Bergeron's 1st Amendment Right to Free Speech and 14th Amendment Right to equal treatment under the law are both being circumvented by these proceedings. This fact is best illustrated by Judge King's ignorance of Bergeron's properly docketed pleadings. King not only demonstrated immediately that he knew and supported the opposition's position, but he also suggested a new torrent of relief for the Fertitta attorney when Garman sought an injunction in this case which would deny Bergeron his First Amendment rights to free speech. Bergeron had no attorney and got no help or advice from the judge, but King advised Garman and decreed relief for the Fertittas. By extension he is also releasing all sanctionable parties from having to pay relief under a statute he pulled out of thin air and one that Garman actually disagreed with.

The unconstitutional order not only denies Bergeron standing to fight for shareholders who were swindled by Xyience's fraudulent bankruptcy, it also

downplays the power of judges. Even worse it forbids Bergeron from speaking to parties in the future in any fashion. The argument made by Garman is that Bergeron cannot gain sanctions against any person or entity who is not a party to the adversary proceeding. The problem with that argument is a judge can use his inherent power to sanction bad faith content. This stems from the same spirit of power that contempt charges come from. The named individuals and entities subject to sanctions all took some part in exacerbating, hindering, dragging out, or initiating the bankruptcy to serve certain purposes that always seemed to benefit the Fertittas first and foremost.

The Supreme Court also clearly and consistently has ruled that an injunction against speech is a classic prior restraint, even when it is imposed as a remedy after a finding of liability. *See, e.g., Near*, 283 U.S. at 706; *Alexander v. United States*, 509 U.S. 544, 550 (1993); *Organization for a Better Austin v. Keefe*, 402 U.S. 415, 417 (1971); *Vance v. Universal Amusement Co., Inc.*, 445 U.S. 308, 311-12 (1980).

In order to obtain an injunction in the first place, a party must show that it is suffering irreparable harm (not just financial harm); and that the injunction will not harm the public interest. See *Joelner v. Village of Washington Park*, 378 F.3d 613, 619 (7th Cir., 2004). Every moment's repression of expression presumptively does the public injury. See *Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."); see also *New York Times Co. v. United States*, 403 U.S. 713, 714-15 (1971) (Black, J., concurring) ("[E]very moment's continuance of the injunctions against these newspapers amounts to a flagrant, indefensible, and continuing violation of the First Amendment.")

This Court has jurisdiction to review interlocutory orders issuing injunctions

pursuant to 28 U.S.C. §1292(a)(1). This court also has a duty to review the FULL record of these proceedings due to the First Amendment concerns involved. In cases raising First Amendment issues, an appellate court has an obligation to make an independent examination of the whole record to ensure that the judgment does not constitute a forbidden intrusion on the field of free expression. See *Bose Corp. v. Consumers Union*, 466 U.S. 485 (1984).

2:11-cv-00772-JCM-PAL

Bergeron and the Trustee were both equally surprised to learn Judge King was presiding over the Bergeron case at the July 10th hearing. Bergeron pooled whatever resources he could muster to get out to Nevada in order to appear before Judge Mike Nakgawa. There was no advance notice King would be the judge of record for the adversary case.

Judge King showed a quick disdain for Bergeron from the opening gavel. He called Bergeron's pleadings "hard to follow" and confessed to not reading them. Judge King had to be reminded at this and the later injunction hearing that there was precedent for allowing the shareholders relief from Bergeron's motion.

Bergeron's motion for leave to amend the sanctions motion was summarily denied without any due deliberation by Judge King. On top of this unfortunate reality, Judge King mandated Bergeron appear in person at all future hearings in a case that may not end for another year. Judge King's blatant bias cannot be tolerated. He cannot be permitted to willfully ignore a party's pleadings because he heard they were hard to follow.

The Fertitta lawyers actually provided Bergeron's First Amended Motion For Rule 11 and 9011 Sanctions (Docket 136 in 08-01082-MKN, filed 1/21/2009) in an

appendix to their motion to dismiss this appeal. That appendix proves Bergeron is in the right with this case. That initial amended motion did not only seek 9011 sanctions, but inherent power sanctions of the court on top of traditional sanctions for bad faith pleadings and behavior. Judge King failed to account for the following examples of the rule of law favoring Bergeron in his motion titled "**Defendant and Counterclaimant's Amended Motion For Rule 11 and 9011 Sanctions**:"

"The Seventh Circuit explained that, in its view, Rule 11 "effectively picks up the torts of abuse of process…and malicious prosecution." Abuse of process corresponds to the improper purpose prong of Rule 11 in this analysis; the Restatement defines that tort as "us[ing] a legal process, whether criminal or civil, against another primarily to accomplish a purpose for which it is not designed…" RESTATEMENT (Second) OF TORTS, Section 682 (1977)."

The court's inherent authority to sanction:

"…the court's inherent authority, recognized in § 105(a), (5) to impose sanctions for a pattern of bad faith conduct that transcends conduct addressed by particular rules or statutes. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 51 (1991); *Caldwell vs. Unified Capital Corp.* (In re: *Rainbow Magazine, Inc.*)., 77 F.3d 278, 283 (9th Cir., 1996). As the Supreme Court explained in *Chambers*, 'if in the informed discretion of the court, neither the statute or the rules are up to the task, the court may safely rely on its inherent power.' *Chambers*, 501 U.S. at 50."

"Sanctions under a court's inherent power are justified against a party who willfully disobeys a court order or acts in bad faith, 'which includes a broad range of willful improper conduct.' *Fink v. Gomez*, 239 F. 3d 989, 991-92 (9th Cir. 2001). To impose inherent power sanctions, a court must find that the party acted 'in bad faith, vexatiously, wantonly, or for oppressive reasons.' *Chambers*, 501 U.S. at 44. A show cause hearing on this motion will prove beyond the shadow of a doubt that bad faith exists in the instant case, but the attached exhibits and affidavits also speak to the bad faith filing argument."

"Fed. R. Bankr. P. 9011(b), Section 105(a) provides:

(a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process."

"Federal Rule of Bankruptcy Procedure 9011 provides in pertinent part:

'The signature of an attorney or party constitutes a certificate that the attorney or party has read the document; that to the best of the party's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose.'"

"A monetary penalty is an appropriate sanction, and such a penalty may be combined with other sanctions necessary to deter. ***Fed. R. Bankr. P 9011***(c)(2). See also 10 Collier on Bankruptcy, ¶¶ 9011.02[2], 9011.09 (Lawrence P. King, et al. eds., 15t ed. Rev. 2002) (Citing Federal Civil Rule 11, and

quoting the Advisory Committee Note to the 1993 Amendments, which states: '[U]nder unusual circumstances, particularly for (b)(1) violations, ***deterrence may be ineffective unless the sanction not only requires the person violating the rule to make a monetary payment, but also directs that some or all of this payment be made to those injured by the violation.***'); *Schwartz v. Kujawa* (In Re *Kujawa*), 270 F.3d 578, 583-84 (8th Cir. 2001)" (EMPHASIS ADDED)

"Rule 11 and Bankruptcy Rule 9011 empower federal courts to impose sanctions where a signed paper submitted to the court is either frivolous or filed for an improper purpose. *Townsend v. Hellman Consulting Corp.*, 914 F.2d 1136, 1140 (9th Cir. 1990) (en banc). The court has broad fact finding powers when exposing sanctions under Rule 11. *United States V. Skyline Terrace*, 26 F.3d 923, 927 (9th Cir. 1994)(Citing *Townsend*, 929 F.2d at 1366.) The Court also has inherent authority to sanction bad faith. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 111 S.Ct. 2123 (1991)."

"Several pleadings themselves qualify as sanction able offenses, and each attorney named above has filed at least one, and in some cases a number of motions, without properly investigating many of the 'facts' within those motions…Beyond hat behavior, however, is the generally lackluster attitude all the above named parties showed toward this lawsuit and in bolstering the initial fraudulent claim. It is clear that they all banked on winning this suit because they were facing a pro-se attorney and had the money to pay their lawyers to crush him."

## DUE PROCESS AND FIRST AMENDMENT CONCERNS DEMAND FAIR HEARINGS ON THE OUTSTANDING APPEALS

Bergeron cannot be denied his 14th Amendment right to due process under the law. He cannot be barred from litigating an issue an injunction in the reorganization plan permits to continue under the label of "The Bergeron Matter." If the Fertittas and Xyience didn't want Bergeron wrapped up in these proceedings, they simply should have never filed their bogus suit against him.

The rights he has to seek sanctions for the shareholders are outlined in Bergeron's prior motions. The lawsuit against Bergeron was filed and persistently pursued to silence Bergeron and keep him occupied. He was not intimidated, so the lawyers facing him had to continuously come up with documents to bury and silence him further. They are still doing it now with this latest bogus motion.

These lawyers do not have the ability to testify for their clients. Those clients have

said very little and offered no sworn statements. Bergeron is fighting on behalf of shareholders as well as seeking damages for what was done to silence his reporting. These shareholders were swindled out of their investments with promises that the UFC would take care of Xyience and prevent the company from going bankrupt. Bergeron was printing the full facts about what was going on until the initial case sidelined him and gave the principals just enough time to hoodwink these shareholders.

The Fertittas and their attorneys used the suit as a way to discredit Bergeron despite not being able to promote any positive judgment on their part. None of their pleadings provide any new evidence mandating a refusal to allow a sanctions motion amendment. There is also no justification for delaying a full hearing on the sanctions motion where all defendants named in that motion are required to appear by subpoena. This case involves the suppression of a media personality's reporting to hide the truth from people the sanctionable parties fully intended to screw.

Judge King treated Bergeron with hostility in those first two hearings connected to his 9011 and 105 sanctions request. Bergeron's claims were dismissed on the spot with no time for deliberation. Additionally, Judge King himself appeared by satellite for the injunction hearing on March 1, 2011 despite denying Bergeron the opportunity to appear telephonically in the future. Judge King set a hearing on the request for an injunction within days for the Fertitta attorneys but allowed Bergeron's Rule 9011 Sanctions hearing to languish when no hearing had been held in years since the first motion's filing.

Fertitta Enterprises and Garman did not and could not prove that there was any real basis for an injunction against Bergeron. Bergeron justified his actions and proved at the hearing on that injunction that he was only looking to ask questions and made no

physical threat to any party who testified and was cross examined.

Judge King ruled that both parties work to craft the injunction together to take into account each side's issues. Garman called Bergeron to his office to negotiate the injunction order, but Garman refused to concede to any of the points he previously intimated were fair. Garman wrote an injunction that completely favored his clients without concern for the First Amendment or any major precedent cases which would forbid such an injunction without a showing of clear and present danger.

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *W inter v. NRD C*, 555 U.S. 7, 24-25 (2008); see also *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1126-27 (9th Cir. 2009). The injunction obtained denying Bergeron standing offends these principals from precedent cases. Those requesting the injunction never made any showing of irreparable harm.

We review a district court's decision to grant or deny a preliminary injunction for abuse of discretion. See *Dominguez v. Schwarzenegger*, 596 F.3d 1087, 1092 (9th Cir. 2010). We review conclusions of law de novo, and findings of fact for clear error. *Id.* The balance of equities was not in favor of the moving party seeking the injunction. The injunction against Bergeron was not in the public interest. The injunction, as written, erodes Bergeron's right to free speech and opens up the system to abuse through this precedent if it is not overturned promptly.

Attorney Gregory Eugene Garman ignored all valid points raised by Bergeron in their face to face meeting. Judge King suggested the two get together to craft an

injunction that would not violate Bergeron's rights. Judge King signed Garman's proposed order on the injunction and filed it only in the core bankruptcy case which Bergeron is not on the service list for. Bergeron did not receive the order in hand until the deadline of 14 days had passed. Bergeron respectfully requests to be put on par with opposing lawyers and be afforded service by email to avoid these same issues in the future.

Both King and the Trustee's counsel have considerably more resources than Bergeron to afford to attend hearings in person. By the very nature of his having to spend so much time on cases which pay him no hourly rates or contributory fees of any nature, Bergeron cannot possibly earn enough to continue returning for every hearing in Nevada if he should choose to return home to New Hampshire at any point. He has left business and important family and friends at a disadvantage by having to stay in Nevada due to Judge King's biased rulings.

Bergeron has active sources within Xyience who informed him of private investigators hired by the company to follow employees they thought may be talking to Bergeron. Though Bergeron is currently residing in Nevada, he has to receive his mail forwarded from New Hampshire. This led to considerable delay in him receiving pertinent documents in any timely fashion. The nature of his work requires him to keep a low profile. He does not wish for the opposition to know where he is staying for fear they will harass him and attempt to intimidate him.

Bergeron is actively involved in developing intelligence about Xyience and the connection to the Fertittas and the UFC. This is very serious and necessary work. Bergeron's legal handling of the matter, and his requesting to represent the shareholders

in a defamation claim via sanctions was casually dismissed by Judge King with no real knowledge of how far Bergeron has come since developing his first defenses for this case.

Judge King ignored clear precedent cases and the injunction filed in the bankruptcy reorganization plan which allowed "The Bergeron matter" to continue in the bankruptcy court. The Bergeron case leading into the bankruptcy sought sanctions for shareholders. There was no doubt that action came into the bankruptcy proceedings tethered to the sanctions request and an extensive counterclaim filed by Bergeron. For Judge King to arbitrarily dismiss both a motion for leave to amend the sanctions motion and then grant an unconstitutional injunction against Bergeron is bad enough. The fact that King admittedly did so without reading Bergeron's documents made the situation much worse. Judge King simply cannot be allowed to completely ignore a party's complete documentation. Furthermore, he cannot be allowed to admit such in open court and have his biased order allowed to stand anyway.

While the appellee's point to an extensive and well-built wall of records the size of a phone book, Bergeron must remind the District Court hearing this case that he created much of that work. There is absolutely no basis to exclude Bergeron from pursuing the opportunity for shareholders to be paid damages from a sanctions request. To point to Bergeron's alleged lack of standing is a cop out. The very idea of the lawsuit Xyience filed against him in 2007 was to silence Bergeron. The time he was preoccupied in court was filled with gaps in his reporting as far as what was really going on behind the scenes. This was by design. The Fertittas bought the company out of bankruptcy, and Bergeron had to learn a new court system when they dragged him into

that process. Though they did nothing to further the initial case, they kept him in the bankruptcy.

Xyience made sure Bergeron came into that bankruptcy process, so to deny him standing to ask that sanctions apply falls short of the best logical and legal analysis. The focus seems fixated on Bergeron's lack of any legal credentials. There's only one problem with taking that approach to looking at this case. You must ask yourself, if he's not competent to argue his case in court how did Bergeron get this far? Why would he be fighting so hard for this case if it was only for his own personal reasons? Bergeron's never pursued this matter because he really wanted to. He did it because he knew he would be the only one to truly fight for the screwed shareholders in this whole process.

Bergeron has a right to stand before a court and argue the sanctions motion and should be treated just as fairly as the local counsel and their clients. Just because he is not represented by a Nevada attorney and chooses to ask for relief for some of the victims of this planned fraudulent bankruptcy, Bergeron should not have his right to a fair hearing casually dismissed.

Bergeron should be allowed to pursue this appeal and should be allowed to amend his 9011 sanctions request and have a hearing set on that motion where all the defendants should appear and be subject to cross examination. Since there are first amendment and 14th Amendment issues involved in both current appeals cases, the district court judges hearing these related appeals should take notice of the following:

***Traguth vs. Zuck***, 710 F.2d 90, 91 (1983): "Implicit in the right to [self-representation] is the obligation on the part of the Court to make reasonable allowances to protect Pro-Se Litigants from the inadvertent forfeiture of important rights because of

their lack of legal training." And the "Court's duty is even broader in the case of a [Pro-Se] defendant who finds himself in court against [his] will with little time to learn the intricacies of civil procedure and law." *See 28 U.S.C.A.* 1654

The solicitude afforded to pro se litigants takes a variety of forms. It most often consists of liberal construction of pleadings, motion papers, and appellate briefs. See *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (per curiam); In re *Sims*, 534 F.3d 117, 133 (2d Cir.2008); *Bertin v. United States*, 478 F.3d 489, 491 (2d Cir.2007). It is not, however, limited to this specific procedural setting. Rather, it also embraces relaxation of the limitations on the amendment of pleadings, see *Holmes v. Goldin*, 615 F.2d 83, 85 (2d Cir.1980) ("A pro se plaintiff · should be afforded an opportunity fairly freely to amend his complaint."), leniency in the enforcement of other procedural rules, see *LeSane v. Hall's Sec. Analyst, Inc.*, 239 F.3d 206, 209 (2d Cir.2001) ("[P]ro se plaintiffs should be granted special leniency regarding procedural matters."); *Enron Oil Co. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir.1993) Arbitrary deadlines Bergeron could not meet due to service failures should not be the sole determining factor in these cases. These cases should be decided on the merits.

("A party appearing without counsel is afforded extra leeway in meeting the procedural rules governing litigation·"); *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir.1983) (indicating that, although the right of self-representation does not exempt a pro se litigant from compliance with procedural rules, it "should not be impaired by harsh application of technical rules"), and deliberate, continuing efforts to ensure that a pro se litigant understands what is required of him, see *Ruotolo v. IRS*, 28 F.3d 6, 8 (2d Cir.1994) ("Recognizing that the [plaintiffs] were acting pro se, the district court should

have afforded them special solicitude before granting the [defendant's] motion for summary judgment. It had an obligation to make certain that the [plaintiffs] were aware of and understood the consequences to them of their failure to comply with the Local Rules." (internal citation omitted)); *Enron Oil Corp.*, 10 F.3d at 96 ("[T]rial judges must make some effort to protect a party [proceeding pro se ] from waiving a right to be heard because of his or her lack of legal knowledge.").

**ANY ORDER GRANTING A MOTION TO DISMISS IS A DEFAULT JUDGMENT**

Default judgments are disfavored in the law and should be used only when the inaction of a party causes the case to grind to a halt. *Enron Oil Corp.* v. *Diakuhara*, 10 F.3d 90, 95–96 (2d Cir. 1993) ("[D]efaults are generally disfavored. . . . "); See also *H.F. Livermore* Corp. v. *Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689, 691 (D.C. Cir. 1970); *United States v. R & M Fashion, Inc.*, 6 OCAHO 826, at 2 (1995); 10 Charles A. Wright and Arthur R. Miller, *Federal Practice and Procedure* §2685 (1983). Moreover, the preferred disposition of cases is upon the merits, not by the imposition of a default judgment, especially where it appears, as here, that there are meritorious defenses. *Enron*, 10 F.3d at 95–96; See *Traguth* vs. *Zuck*, 710 F.2d at 94; *Meehan* v. *Snow*, 652 F.2d 274,

277 (2d Cir.1981); *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242 (3d Cir. 1951).

Thus, even when a default judgment has been entered, it may constitute an abuse

of judicial discretion to refuse to vacate the default judgment. *Tozer*, 189 F.2d at 245. It is the responsibility of the trial court to maintain a balance between clearing its calendar and affording litigants a reasonable chance to be heard. *Enron*, 10 F.3d at 95–96; see also *Merker v. Rice*, 649 F.2d 171, 174 (2d Cir.1981); *Gill v. Stolow*, 240 F.2d 669, 670 (2d Cir.1957) ("general principles cannot justify denial of a party's fair day in court except upon a serious showing of willful default").

Bergeron has been unable to respond to documents he received far too late to take action on. This opposition is proof he does not want this case to grind to a halt. Bergeron would like his day in court.

Bergeron is a writer with a very modest income who cannot afford the costs a large law firm like Garman's can. Bergeron received a large stack of paperwork from Garman on July 9th, a day after receiving the U.S. District Court's orders demanding this response by July 11th. Bergeron requested that informa pauperis status to be applied for all actions of the court transporting the full record, including transcripts. Bergeron's informa pauperis request was never denied. Bergeron should be afforded an opportunity to appear in person and defend his requests to appeal regarding two hearings at which Judge King admitted having no working knowledge of Bergeron's pleadings. At the same time, the district court is required to examine the full record prior to any such hearing. The complex First Amendment issues demand close scrutiny from the judges involved.

Garman attaches many of those pleadings Judge King ignored to an appendix to Case 11-cv-00772-JCM-PAL. Bergeron points to that full record as evidence that he performed due diligence in researching the legal background for sanctions. Bergeron

presented affidavits that outline the evidentiary basis requiring a sanctions hearing. The defense have provided no affidavits of their clients which have definitively denied any actions Bergeron alleges they perpetrated, and the affidavits of attorneys are easy to discredit.

Attorney Gregory Garman was asked on the stand about his calling Bergeron "a professional plaintiff" at the injunction hearing while failing to show how there was evidence Bergeron had ever even been a plaintiff. The fact was, Bergeron never was the first person to sue anyone.

Gregory Garman is the attorney for the Fertittas and Zyen, LLC, but there is no evidence he represents any of the other properly served parties to the 9011 motion. There has been no formal response related to those parties, and Garman cannot speak for them. Bergeron presented evidence these parties received certified copies of he sanctions motion as amended. They also received notice of the motion for leave to Amend, and none of them appeared or sent counsel to the hearing. To dismiss this appeal on the request of a small fraction of the perpetrators of this fraud would be to ignore the duly presented evidence even the opposition willingly placed on the docket.

The trustee in this case does not represent the best interests of providing any major shareholder relief. There are no caps on sanctions, and the language on sanctions specifically outlines that a levy can be placed on an offender equivalent to deter repeat behavior. This requires a reworking of the motion to amend to suggest how the breakdown of the $150 million in sanctions would be arranged and what each sancionable party named in the motion would be asked to pay for engaging in their share of the fraud.

The system Bergeron has had to fight through is so permeated with bias toward the local appellee and their attorneys and against the self-represented appellant that an appeal such as this is the only remedy in which Bergeron can ever hope for a fair ruling taking into account the full weight of precedent law. There must be a full hearing on this matter.

WHEREFORE: This appeals should proceed in the court where they are already designated and should be set to be heard promptly. Bergeron is prepared to attend such a hearing and formally requests he be notified of future pleadings, orders, and hearing dates via email at rich.Bergeron@gmail.com.

Respectfully Submitted,

**Rich Bergeron**
**PO BOX 5212**
**Weirs Beach, NH 03247**
**617-209-4325**
**Attorney Pro-Se**
Rich.Bergeron@gmail.com
DATED: July 11, 2011

Richard E. Bergeron III
PO Box 5212
Weirs Beach, NH 03247
Pro-Se
Email: Rich.Bergeron@gmail.com
617-209-4325

# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| In re: | 2:11-cv-00772-JCM -PAL<br>2:11-cv-00913-GMN-LRL<br>Case No: BK-S-08-10474-MKN<br>Chapter 11 |
| XYIENCE, INCORPORATED,<br>A Nevada Corporation,<br><br>Debtor. | Adversary No. 08-1082-MKN |
| XYIENCE, INCORPORATED,<br>A Nevada Corporation,<br><br>Plaintiff.<br><br>v.<br><br>RICHARD BERGERON, an individual,<br><br>Defendant. | |
| RICHARD BERGERON, an individual,<br><br>Counterclaimant,<br><br>v.<br><br>XYIENCE INCORPORATED, a Nevada corporation,<br><br>Counterdefendant. | **CERTIFICATE OF SERVICE**<br><br>Hearing Date: n/a<br>Time: n/a |

**DEFENDANT AND COUNTERCLAIMANT RICHARD E. BERGERON'S CERTIFICATE OF SERVICE:**

Bergeron served all parties with the attached "Opposition To Appellee's Motions to Dismiss" pleading via U.S. Mail and email as follows:

**Original Xylence, Inc. Attorney Jamie Cogburn:**

**9555 S. Eastern Avenue**
**Suite 280**
**Las Vegas, NV 89123**

**William Bullard on behalf of himself and Zyen, LLC:**

**1335 E. Sunset Road, SUITE J**
**Las Vegas, NV 89119**

**Karim Maskatiya:**

**7244 Fisher Island Dr**
**Miami Beach, FL 33109**

**Omer Sattar:**

**662 Tam 0 Shanter**
**Las Vegas, Nevada 89109**

**Zuffa, LLC:**

**2960 West Sahara Avenue**
**Suite 100**
**Las Vegas, NV 89102**

**Station Casinos, Inc.:**

**1505 SOUTH PAVILLION CENTER DRIVE**
**Las Vegas, NV 89135**

**Michael Levy:**

**1335 E. Sunset Road Suite # J-H**
**Las Vegas, Nevada 89119**

**Kirk Sanford:**

**7199 Ranchito Circle**
**Las Vegas, Nevada 89120**

**XYIENCE, Inc.:**
**C/O Jon Backman & David Herzog (Trustee's Counsel and Trustee, respectively)**

jbackman@backlawoffice.com, drhlaw@mindspring.com

**Attorney John Mowbray (Director) and Laurel Davis and their firm: Fennemore Craig:**

JMOWBRAY@fclaw.com
LDAVIS@fclaw.com

**Attorney Jon Pearson, formerly of Fennemore Craig and now with Ballard Spahr, LLP:**

pearsonj@ballardspahr.com

**Attorney Pamela Lawson and her firm Hunterton and Associates, also operating in the past on behalf of ADAM FRANK**

plawson@huntertonlaw.com

**LAWRENCE J. SEMENZA, also on behalf of ADAM FRANK:**

lsemenza@bhfs.com; grodriguez@bhfs.com

**TODD L. BICE, also on behalf of ADAM FRANK:**

lit@pisanellibice.com, mar@pisanellibice.com

**MICHAEL N. FEDER on behalf of ZUFFA MARKETING, LLC:**

mfeder@lrlaw.com, cwrangham@lrlaw.com;nfortenberry@lrlaw.com

**Attorneys Matthew C. Zirzow and Gregory Garman and their firm: Gordon and Silver, LTD, on behalf of Fertitta Enterprises, Lorenzo Fertitta, Estate of Frank Fertitta Jr., and Frank Fertitta III:**

bankruptcynotices@gordonsilver.com; bknotices@gordonsilver.com

**ANTHONY W. AUSTIN on behalf of ZUFFA MARKETING, LLC:**

aaustin@lrlaw.com

DATED: July 11th, 2011

Signed:

**Rich Bergeron**
**PO BOX 5212**
**Weirs Beach, NH 03247**
**617-209-4325**
**Attorney Pro-Se**
Rich.Bergeron@gmail.com